O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| TOTRAN TRANSPORTATION SERVICES, LTD, | § § § | |
| Plaintiff, | § | |
| VS. | § § | |
| FITZLEY, INC, | § § | |
| Defendant and Third-Party Plaintiff, | § § § | CIVIL ACTION NO. L-08-125 |
| VS. | § § § | |
| TRANSPORTES RAGAT, SA DE CV | § § § | |
| Third-Party Defendant. | § | |

MEMORANDUM AND ORDER

Plaintiff Totran Transportation Services, Ltd. filed this diversity action against Defendant/Third-Party Plaintiff Fitzley, Inc. ("Fitzley"). (Docket No. 1.) According to the original Complaint, Totran, a Canadian company, entered an agreement with the owner of industrial gas heater equipment to transport the equipment from Canada to San Luis Potosi, Mexico. (Docket No. 1, 5.) Totran, directly or otherwise, presumably brought the equipment as far as Laredo, Texas. Totran then contracted with Fitzley, a Laredo, Texas company, to transport the equipment to Tamazunchale, San Luis Potosi, Mexico, but the equipment was allegedly damaged in Mexico. (Docket No. 8, ¶¶ 5.4-5.5.) Fitzley filed a third-party complaint alleging

state-law claims of negligence and breach of contract against Third-Party Defendant Transportes Ragat, SA de CV ("Ragat"), a Mexican company Fitzley hired to transport the equipment in Mexico. (Docket No. 8.) Pending before the Court are Ragat's two motions to dismiss the third-party complaint. (Docket Nos. 16, 20.) Fitzley has failed to respond to either motion.[1]

Ragat first moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), claiming Fitzley's state-law claims are preempted by the Carmack Amendment, 49 U.S.C. § 14706 et seq. (Docket No. 16.) Ragat also moves to dismiss based on forum non conveniens. (Docket No. 20.)

## I. Background

Ragat provides affidavit and documentary evidence that is uncontested by Fitzley. According to that evidence, on September 22, 2006, Ragat received a load of unassembled heaters[2] in its yard in Nuevo Laredo, Mexico. (Docket No. 20, Ex. A, Garcia Decl. ¶ 3.) Although Fitzley has asserted that, "to the best of [its] knowledge," Ragat picked up the load in Laredo, it

---

[1] Defendant Fitzley did file a response to a motion for summary judgment filed by Totran, but that motion is not addressed in this Memorandum.

[2] Though Totran's complaint (Docket No. 1, at 5) alleges the transportation of one heater, the evidence provided by Ragat, including the bill of lading, indicates Ragat transported multiple unassembled heaters. (Docket No. 20, Ex. B.) That discrepancy does not affect resolution of the present motions.

offered no valid summary judgment evidence to support that belief. (Docket No. 8 ¶ 5.3.) Fitzley hired Ragat to transport the load from Nuevo Laredo to Tamazunchale and deliver it to consignee, Gesscada, S.A. de C.V ("Gesscada"). (Garcia Decl. ¶ 4.)

Ragat issued bill of lading 14376 to cover the carriage. (Garcia Decl. ¶ 4.) The Mexican bill of lading is in Spanish; Ragat's translation is uncontested. (Docket No. 20, Ex. B.) Fitzley's name and address is found in the box "Remite," translated as "sender." Id. Under the heading "Destino" ("destination") is Gesscada's name and address in Tamazunchale. Id. The total price for the transportation is $1600. Id. The bill of lading contains a damages limitation referencing Mexican law. Id.

On or about September 24, 2006, the truck hauling the load was involved in an accident in Mexico, roughly one hundred kilometers outside of Tamazunchale. (Garcia Decl. ¶ 5.) Ragat made arrangements for the load to be placed on another trailer and ultimately delivered to Gesscada. Id.

## II. Discussion

*A. Motion to Dismiss State-law Claims as Preempted by Carmack*

The Carmack Amendment establishes liability for a motor carrier which provides transportation between states within the

United States, and between the United States and an adjacent foreign country "when transported under a through bill of lading." See 49 U.S.C. § 14706; see also Apparel Prod. Servs. v. Ind. Transp., Civil Action Nos. L-08-26, L-08-62, 2009 WL 890275 (S.D. Tex. March 28, 2009). Courts have defined a through bill of lading as a bill of lading in which a carrier agrees to transport goods from a point of origin to a designated point of destination, even though different carriers may perform a portion of the contracted shipment. See, e.g., Commercial Union Ins. Co. v. Sea Harvest Seafood Co., 251 F.3d 1294, 1302 (10th Cir. 2001). Whether a particular document is a through bill of lading is a question of fact, Union Pac. R.R. Co. v. Greentree Transp. Trucking Co., 293 F.3d 120, 127 (3rd Cir. 2002), to be determined by examining various factors, such as the final destination designated on the document, the conduct of the shipper and the carriers, and whether the connecting carriers were compensated by the payment made to the initial carrier or by separate consideration from the shipper, Seguros Comercial Americas, S.A. de C.V. v. Am. President Lines, Ltd., 910 F. Supp. 1235, 1239 (S.D. Tex. 1995), vacated on other grounds, 105 F.3d 198 (5th Cir. 1996).

The goods were delivered to Ragat's factory in Nuevo Laredo, Mexico. (Garcia Decl. § 3.) The bill of lading, according to the deposition testimony, only covers the goods'

transit between Nuevo Laredo and Tamazunchale. The payment is only for that portion of the journey. As such, the bill of lading is not a through bill of lading covering transportation from a point of origin within the United States to a point of destination in an adjacent foreign country. Instead, it covers transportation wholly in Mexico, to which the Carmack Amendment is not applicable. Because Carmack does not apply to a wholly Mexican carriage, Fitzley's state-law claims are not preempted.

*B. Motion to Dismiss for Forum Non Conveniens*

A federal court sitting in diversity applies the federal law of forum non conveniens in deciding a motion to dismiss in favor of a foreign country. <u>DTEX, LLC v. BBVA Bancomer, S.A.</u>, 508 F.3d 785, 794 (5th Cir. 2007). A forum non conveniens analysis begins with determining whether there is an available and adequate alternative forum. <u>Id.</u> A forum is available when the case and the parties can come within that forum's jurisdiction. <u>Id.</u> A forum is adequate if it will not deprive the parties of all remedies or treat them unfairly, even though they may not enjoy all the benefits of an American court. <u>Id.</u> at 796.

Once an alternative forum is available, a court then determines which forum is best suited to the litigation. <u>Id.</u> at 794. To make this determination, the Court considers whether

certain private or public factors weigh in favor of dismissal. Id. The private interest factors include:

(1) the relative ease of access to sources of proof;
(2) availability of compulsory process for attendance of unwilling, and the cost of obtaining willing, witnesses;
(3) possibility of view of [the] premises, if view would be appropriate to the action;
(4) all other practical problems that make trial of a case easy, expeditious and inexpensive . . . enforceability of judgment[; and whether] the plaintiff [has sought to] "vex," "harass," or "oppress" the defendant.

Id. (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

The public interest factors include:

(1) the administrative difficulties flowing from court congestion;
(2) the local interest in having local controversies resolved at home;
(3) the interest of having a trial of a diversity case in a forum that is familiar with the law that must govern the action;
(4) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and
(5) the unfairness of burdening citizens in an unrelated forum with jury duty.

Id. The ultimate inquiry is where the trial will best serve the convenience of the parties and the interests of justice. Id.

Mexico is an adequate alternative forum. Ragat's unchallenged expert in Mexican law attests that this dispute comes within the jurisdiction of the federal courts in Mexico. (Docket No. 20, Ex. C., Peña Decl. 1-4.) Thus, the forum is available. It is adequate because both Fitzley and Ragat have access to remedies in the Mexican federal courts. Id. at 7-8.

This is consistent with other Fifth Circuit cases finding Mexico an adequate forum. DTEX, LLC, 508 F.3d at 796; Vasquez v. Bridgstone/ Firestone, Inc., 325 F.3d 665, 672 (5th Cir. 2003) (finding Mexico an adequate forum despite limits on damages); Gonzalez v. Chrysler Corp., 301 F.3d 377, 383 (5th Cir. 2002) (affirming dismissal of suit against American automobile manufacturer on basis of forum non conveniens in case arising from accident in Mexico).

Ragat makes arguments as to the first three private factors. The first private factor, relative ease of access to evidence, favors dismissal. The goods were picked up in Nuevo Laredo, and the transportation was entirely in Mexico. (Garcia Decl. ¶¶ 3-5.) Documents concerning the accident, including those made by the authorities after the accident and those documenting the condition of the merchandise when it arrived, are also in Mexico. (Garcia Decl. ¶ 7.) The witnesses are all in Mexico, including those picking up the goods, witnessing the accident, handling the merchandise, and observing the condition of the merchandise when it arrived in Tamazunchale. (Garcia Decl. ¶ 6.)

The second factor involves the availability of compulsory process for unwilling witnesses and the cost of attendance for willing witnesses. As noted above, a majority of the witnesses are located in Mexico. Travel to a court in Mexico will be less

cumbersome than travel to the United States. Further, to the extent that any witnesses are unwilling to testify, Mexican courts offer a procedure to compel cooperation. (Peña Decl. 7.)

The third factor also favors dismissal. While it is unclear that a visit to the accident site would be helpful, the site's location in Mexico can only support dismissal. In sum, the private interest factors favor dismissing this case in favor of a Mexican forum.

If the private interest factors favor dismissal, a court need not consider the public interest factors. See Baumgart v. Fairchild Aircraft Corp., 981 F.2d 824, 837 (5th Cir. 1993). Nevertheless, Ragat raises the public factors, and the Court will consider them briefly.

The first factor, court congestion, heavily favors a Mexican forum. Ragat provides evidence showing that the Southern District of Texas had the second highest number of criminal filings in the federal system in 2008, behind only the Western District of Texas. (Docket No. 20, Ex. E.) The Laredo Division alone is on pace for the filing of approximately three thousand criminal felony cases before the end of 2009.

The second factor, the local interest in having localized controversies decided at home, again favors dismissal. As discussed above, any losses or damages arose in Mexico while a Mexican carrier was on Mexican territory transporting goods

under a Mexican bill of lading.  Mexico has a strong interest in having this matter resolved in its courts, under its laws.

Finally, this case likely requires the application of Mexican law.  For both tort and contract claims, Texas follows the "most significant relationship test" set out in the Restatement (Second) of Conflict of Laws §§ 6, 145, and 188.  DTEX, LCC, 508 F.3d at 802.  Relevant contacts to take into account in a tort case include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered.  Restatement (Second) of Conflict of Laws § 145.  Outside of Fitzley's location in Laredo, all other contacts favor a Mexican forum.

The relevant contacts in a contract case include: (a) the place of contracting, (b) the place of negotiation, (c) the place of performance, (d) the location and the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.  Restatement (Second) of Conflict of Laws § 188.  The record is silent on place of contracting or negotiation.  However, the place of performance is clearly in Mexico, as is the subject

9 / 10

matter of the contract. Mexico has the most significant relationship to this case, and Mexican law will likely apply.

## Conclusion

For the reasons outlined above, the Court DENIES Ragat's motion to dismiss based on preemption (Docket No. 16), and GRANTS Ragat's motion to dismiss based on forum non conveniens (Docket No. 20.)

DONE at Laredo, TX, this 18th day of September, 2009.

_____
George P. Kazen
Senior United States District Judge